Martin Schmidt, Esq. (SBN 171673)
mschmidt@nationalinjuryadvocates.com
**SCHMIDT NATIONAL LAW GROUP**
3033 Fifth Avenue, Suite 335
San Diego, California 92103
Telephone: (800) 631-5656
Facsimile: (619) 393-1777

AND

Jeffrey L. Haberman (*pro hac vice* anticipated)
jhaberman@schlesingerlaw.com
Jonathan R. Gdanski (*pro hac vice* anticipated)
jonathan@schlesingerlaw.com
Scott P. Schlesinger (*pro hac vice* anticipated)
scott@schlesingerlaw.com
**SCHLESINGER LAW OFFICES, P.A.**
1212 SE Third Avenue
Fort Lauderdale, Florida 33317
Telephone: (954) 467-8800
Facsimile: (954) 320-9509

*Attorneys for Plaintiffs*

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| **Michael King and Gus Lopez,** on behalf of themselves and all those similarly situated,<br><br>　　Plaintiffs,<br><br>　　v.<br><br>**General Motors LLC ;OnStar LLC; And**<br>**LexisNexis Risk Solutions Inc.**<br><br>　　Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>**(1) VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681 ET. SEQ.**<br><br>**(2) VIOLATION OF CALIFORNIA CONSUMER PRIVACY ACT §1798.110 AND §1798.115 ET. SEQ**<br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT

## INTRODUCTION

1. Plaintiffs, Michael King ("Plaintiff King"), and Gus Lopez ("Plaintiff Lopez") (collectively "Plaintiffs") bring this action for themselves and on behalf of all persons ("Class Members") who had their driving data ("telematics") collected and shared by General Motors LLC ("GM") and OnStar LLC ("OnStar") to LexisNexis Risk Solutions Inc. ("Lexis") (collectively "Defendants") without their knowledge and/or consent.

## PARTIES

2. Plaintiffs are natural persons residing in the State of California. In addition, Plaintiffs are "consumers" as that term is defined by 15 U.S.C. §1681a(c).

3. Defendant GM is a corporation headquartered in Detroit, Michigan, and registered with the California Secretary of State doing business in the State of California.

4. Defendant OnStar is a corporation headquartered in Detroit, Michigan, and registered with the California Secretary of State doing business in the State of California.

5. Defendant Lexis is a global data and analytics company headquartered in Los Altos, California, and registered with the California Secretary of State doing business in the State of California.

6. Defendants GM and OnStar are furnishers of information as contemplated by 15 U.S.C. §1681a that regularly and in the ordinary course of business furnish information to a consumer credit reporting agency.

7. Defendant Lexis is a consumer credit reporting agency as defined in 15 U.S.C. §1681a(f), headquartered and doing business in the State of California.

8. Defendants GM and OnStar collect personal information about consumers as contemplated by CCPA §1798.110(c).

9. Defendants sell, share, and/or disclose consumers' personal information as contemplated by CCPA §1798.115(c).

**JURISDICTION AND VENUE**

10. This Court has federal question jurisdiction because this case arises out of violation of federal law. 15 U.S.C. §1681 *et seq.*; 28 U.S.C. §1331. Jurisdiction arises for Plaintiffs' supplemental state claims under 28 U.S.C. §1367.

11. This action arises out of Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. §1681 ("FCRA") and the California Consumer Privacy Act ("CCPA").

12. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. §1391(b)(2) as a substantial part of the events and/or omissions giving rise to the underlying action occurred in the Central District of California. 28 U.S.C. §1391(b)(2).

**APPLICABLE LAW**

13. The Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.* ("FCRA"), protects information collected by consumer reporting agencies such as credit bureaus, medical information companies and tenant screening services. Information in a consumer report cannot be provided to anyone who does not have a purpose specified in the Act. Companies that provide information to consumer reporting agencies also have specific legal obligations, including the duty to investigate disputed information. In addition, users of the information for credit, insurance, or employment purposes must notify the consumer when an adverse action is taken on the basis of such reports.[1]

14. The California Consumer Privacy Act ("CCPA") gives consumers more control over the personal information that businesses collect about them. The CCPA affords California consumers with several privacy rights, including the right to know about the personal information a business collects about them and how it is used and shared, and the right to opt-out of the sale or sharing of their personal information. In November of 2020, California voters approved Proposition 24, which amended the CCPA and added new privacy protections that began on January 1, 2023. As of January 1, 2023, consumers have additional privacy rights

---

[1] https://www.ftc.gov/legal-library/browse/statutes/fair-credit-reporting-act

including the right to correct inaccurate personal information that a business has about them, and the right to limit the use and disclosure of sensitive personal information collected about them.[2] Businesses that are subject to the CCPA have several responsibilities, including giving consumers certain notices explaining their privacy practices. *Id*.

## GENERAL ALLEGATIONS

15. Plaintiffs bring this action under the FCRA and CCPA to challenge the actions of Defendants regarding erroneous reports of derogatory and negative driving information made without Plaintiffs' knowledge and/or consent, and the illegal transfer and publication of same.

16. Plaintiffs make these allegations on information and belief, with the exception of those allegations that pertain to Plaintiffs, or to Plaintiffs' counsel, which Plaintiffs alleges on personal knowledge.

17. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

18. Unless otherwise stated, all the conduct engaged in by Defendants took place in the State of California.

19. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogates, representatives, and insurers of Defendants named.

20. At all times relevant, Plaintiffs were individuals residing within the State of California.

21. At all times relevant, Defendants conducted business within the State of California.

22. On or around 2016, Plaintiff King purchased a Chevrolet Camaro in Glendale, California.

23. The purchase agreement, signed by Plaintiff King, makes no mention of Lexis, data sharing, and/or anything privacy related.

24. Plaintiff King retained the same insurance provider, Geico, since 2016.

25. However, despite Plaintiff King's stellar driving history, Geico increased his insurance

---

[2] California Consumer Privacy Act (CCPA) | State of California - Department of Justice - Office of the Attorney General

premiums by approximately $600.00.

26. Plaintiff King received no information from Geico regarding the basis for the increase in his insurance premiums.

27. To add insult to injury, Geico denied Plaintiff King's request to renew his coverage with Geico.

28. Upon information and belief, the rise in Plaintiff King's insurance premiums was a direct and proximate result of the deceptive acts and practices of Defendants.

29. Upon information and belief, Plaintiff King was denied renewal of his insurance policy with Geico as a direct and proximate result of the deceptive acts and practices of Defendants.

30. On or around 2020, Plaintiff Lopez purchased a Chevrolet Tahoe in Oceanside, California.

31. The purchase agreement, signed by Plaintiff Lopez, makes no mention of Lexis, data sharing, and/or anything privacy related.

32. Plaintiff Lopez retained the same insurance provider, Progressive, since 2020.

33. However, despite Plaintiff Lopez's stellar driving history, Geico significantly increased his insurance premiums.

34. Plaintiff Lopez received no information from Progressive regarding the basis for the increase in his insurance premiums.

35. To add insult to injury, Progressive denied Plaintiff Lopez's request to renew his coverage with Progressive.

36. Upon information and belief, the rise in Plaintiff Lopez's insurance premiums was a direct and proximate result of the deceptive acts and practices of Defendants.

37. Upon information and belief, Plaintiff Lopez was denied renewal of his insurance policy with Progressive as a direct and proximate result of the deceptive acts and practices of Defendants.

38. Upon information and belief, GM and OnStar illegally furnished Plaintiffs' private driving information to Lexis without their knowledge and/or consent, which Lexis utilized to prepare consumer disclosures available for public consumption, including car insurance companies.

39. Lexis' consumer disclosures contain each driving event, including trip details that show the start date, end date, start time, end time, acceleration events, hard brake events, high speed events, distance, and VIN.

40. Notably absent from these consumer disclosures is any context related to these driving events.

41. The consumer reports do not define what these events mean nor how they are calculated.

42. Furthermore, the reports do not explain how or why someone might have experienced these events. Stating these events, by themselves, says nothing of the other driving conditions and factors one may have experienced.

43. The only way for telematics data to reach insurance companies is if someone "opts-in" with their insurance company to get a safe driving discount.

44. Plaintiffs never opted into any insurance program that would have allowed their information to be shared.

45. Plaintiffs are informed and believe that General Motors and OnStar sold and/or shared their driving data to Lexis without their knowledge and/or consent.

46. Upon information and belief, the uncontextualized, misleading, and personal driving information on their consumer disclosures harmed Plaintiffs by significantly raising their insurance premiums and/or resulting in the denial of coverage.

47. Additionally, the data presented on the Lexis consumer disclosure is so decontextualized that it can hardly be called accurate. Nevertheless, insurance companies rely upon these consumer reports to determine pricing and eligibility.

48. Moreover, Plaintiffs are informed and believe that GM and OnStar mislead individuals about their data sharing practices. Plaintiffs never knowingly consented to these practices.

49. Their purchase agreements said nothing of Lexis and/or data sharing.

50. The OnStar User Terms included on the OnStar website explain that "GM collects, uses, and shares information from and about You and your Vehicle. The GM Privacy Statement describes what GM does with that information. *You consent to the collection, use, and sharing of*

*information described in the Privacy Statement*[.]" (emphasis added)

51. OnStar includes a supplemental privacy statement for application services. It explains that OnStar collects and treats "information from you as described in the OnStar Privacy Statement."

52. Finally, the OnStar Privacy Statement, reads in relevant part:

> **Third-Party Business Relationships:** With businesses that GM enters into business relationships, such as SiriusXM, in connection with their products and services; research institutes, for research and development purposes (*for example, improving highway safety*); or dealers, fleet, or rental car companies, for service or maintenance of your vehicle. We may also share data with third parties for marketing activities (with necessary consents) or where you have elected to receive a service from them and/or authorized them to request data from GM (*for example, financial organizations who offer financing for the purchase or lease of GM vehicles or usage based insurance providers*).

53. This section, neatly hidden on their website, and made inconspicuous through the downloading of mobile applications, at worst, do not grant OnStar or GM the right to furnish car driving data to Lexis and is ambiguous at best. The applicable section—"where you have elected to receive a service from them and/or authorized them to request data from GM"—does not mention Lexis and is buried at the tail end of the paragraph. Furthermore, it shifts the onus on consumers, who are likely already unaware that car data is being tracked and shared. If consumers are aware, they would have to comb through every insurance carrier's clickwrap agreements to get a quote.

54. This scheme is deceptive, unfair, and misleading to consumers.

55. Plaintiffs are informed and believe that Lexis continues to report this damaging information or consumer disclosures without regard to their context. This information, standing alone, is incomplete. These data metrics do not provide an accurate picture of the individual to whom the report relates.

56. And like with Plaintiffs, much of this information is likely reported without consumers' knowledge and/or consent.

57. Plaintiffs' insurance premiums went up substantially because of Defendants' actions, and ultimately resulted in them being denied coverage.

58. On March 11, 2024, the New York Times reported an investigative piece about this exact issue. The article highlights individuals who have had their insurance rates increase due to Lexis publishing, among others, GM car drivers' data:

> "Modern cars are internet-enabled, allowing access to services like navigation, roadside assistance and car apps that drivers can connect to their vehicles to locate them or unlock them remotely. In recent years, automakers, including G.M., Honda, Kia and Hyundai, have started offering optional features in their connected-car apps that rate people's driving. Some drivers may not realize that, if they turn on these features, the car companies then give information about how they drive to data brokers like LexisNexis… Especially troubling is that some drivers with vehicles made by G.M. say they were tracked even when they did not turn on the feature — called OnStar Smart Driver — and that their insurance rates went up as a result… Even for those who opt in, the risks are far from clear. I have a G.M. car, a Chevrolet. I went through the enrollment process for Smart Driver; there was no warning or prominent disclosure that any third party would get access to my driving data."

59. Plaintiffs' privacy has been gravely invaded by Defendants' improper actions.

### CLASS ALLEGATIONS
### PROPOSED CLASS

60. Plaintiffs brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and all others similarly situated.

61. Plaintiffs bring this case on behalf of Classes defined as follows:

<u>FCRA Class</u>

**All persons who (1) had their car's driving data (telematics) collected and shared with Lexis; (2) without those persons' consent; and (3) those persons' telematics appeared on at least one Lexis consumer disclosure.**

<u>CCPA Class</u>

**All persons who (1) had their car's driving data (telematics) collected and shared with Lexis; (2) without those persons' consent; and (3) those persons' telematics appeared on at least one Lexis consumer disclosure.**

62. Defendants and their employees or agents are excluded from the Class. Plaintiffs do not know the number of members in the Class but believes the Class members number in the several thousands, if not more. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

## NUMEROSITY

63. Upon information and belief, Defendants OnStar and GM shared millions of consumers' driving behavior data to Lexis without their knowledge and/or consent.

64. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of determination from Defendants' records.

## COMMON QUESTIONS OF LAW AND FACT

65. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

    a) Whether Defendants' practices are considered unfair and/or deceptive.

  b) Whether Defendants' practices constitute an invasion of privacy.

  c) Whether Defendants' conduct was knowing and willful.

  d) Whether Defendants' are liable for damages, and the amount of such damages.

  e) Whether Defendants' should be enjoined from such conduct in the future.

66. The common questions in this case are capable of having common answers. If Plaintiffs' claim that Defendants routinely track driving data is accurate, Plaintiffs and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

## TYPICALITY

67. Plaintiffs' claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

## PROTECTING THE INTERESTS OF THE CLASS MEMBERS

68. Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiffs are adequate representative and will fairly and adequately protect the interests of the Class.

## PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

69. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendants' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdensome by individual litigation of such cases.

70. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts,

whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I

### KNOWING AND/OR WILLFUL VIOLATION OF THE FCRA, 15 U.S.C. §1681e(b)

**(On Behalf of Plaintiffs and the FCRA Class Against Lexis)**

71. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

72. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. §1681e(b).

73. Lexis, acting as a consumer reporting agency as defined by 15 U.S.C. §1681c(1), has failed to implement procedures to maintain maximum possible accuracy regarding Plaintiffs' and the Class Members' driving data.

74. Lexis has knowingly and willfully engaged in the collection and production of inaccurate data metrics regarding Plaintiffs' and other consumers' driving abilities.

75. As a result of Lexis' conduct, insurance carriers and others who view these consumer reports receive and in turn rely on an inaccurate representation of Plaintiffs' and other consumers' driving abilities.

76. Upon information and belief, the uncontextualized, misleading, and personal driving information on Lexis' consumer disclosures harmed Plaintiffs by significantly raising their insurance premiums and/or resulting in the denial of coverage.

77. The foregoing deceptive acts and practices constitute reckless and/or negligent violations of the FCRA, including but not limited to 15 U.S.C. §1681e(b).

78. As a result of each and every willful violation of FCRA §1681e(b), Plaintiffs are entitled to actual damages as the Court may allow pursuant to 15 U.S.C. §1681n(a)(1); statutory damages pursuant to 15 U.S.C. §1681n(a)(1); punitive damages as the Court may allow pursuant to

15 U.S.C. §1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. §1681n(a)(3) from Defendants.

79. As a result of each and every negligent noncompliance of FCRA §1681e(b), Plaintiffs are entitled to actual damages as the Court may allow pursuant to 15 U.S.C. §1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. §1681o(a)(2) from Defendants.

## COUNT II

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. §1681s-2(a)(1)(A)

**(On Behalf of Plaintiffs and the FCRA Class Against GM and OnStar)**

80. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

81. Pursuant to 15 U.S.C. §1681s-2(a)(1)(A), "furnishers" of information to consumer reporting agencies shall not provide inaccurate information relating to any consumer reporting agency if they know or has reasonable cause to believe that the information is inaccurate.

82. GM and OnStar, acting as furnishers of consumer information, have failed to provide accurate information regarding consumers' driving history to Lexis.

83. GM and OnStar knew or should have known that the telematics collected by them was uncontextualized and misleading. Nonetheless, the proceeded to sell such inaccurate information to Lexis.

84. As a result of GM and OnStar's conduct, insurance carriers and others who view Lexis' consumer reports receive and in turn rely on an inaccurate representation of Plaintiffs' and other consumers' driving abilities.

85. Upon information and belief, the uncontextualized, misleading, and personal driving information on Lexis' consumer disclosures harmed Plaintiffs by significantly raising their insurance premiums and/or resulting in the denial of coverage.

86. The foregoing deceptive acts and practices constitute reckless and/or negligent violations of the FCRA, including but not limited to §1681s-2(a)(1)(A).

87. As a result of each and every willful violation of FCRA §1681s-2(a)(1)(A), Plaintiffs are entitled to actual damages as the Court may allow pursuant to 15 U.S.C. §1681n(a)(1); statutory damages pursuant to 15 U.S.C. §1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. §1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. §1681n(a)(3) from Defendants.

88. As a result of each and every negligent noncompliance of FCRA §1681s-2(a)(1)(A), Plaintiffs are entitled to actual damages as the Court may allow pursuant to 15 U.S.C. §1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. §1681o(a)(2) from Defendants.

## COUNT III

## KNOWING AND/OR WILLFUL VIOLATIONS OF CALIFORNIA CONSUMER PRIVACY ACT §1798.110

(On Behalf of Plaintiffs and the CCPA Class Against GM and OnStar)

89. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

90. Pursuant to CCPA §1798.110(c) and §1798.130(a)(5)(B), a business that collects personal information about consmers shall disclose the following information in its online privacy policy if the business has an online privacy policy, and in any California-specific description of consumers' privacy rights, or, if the business does not maintain those policies, on its internet website:

    a) The categories of personal information it has collected about consumers;

    b) The categories of sources from which the personal information is collected;

    c) The business or commerical purpose for collecting, selling, or sharing personal information;

      d) The categories of third parties to whom the busoness discloses personal information; and

      e) That a consumer has the right to request the specific pieces of personal information the business has collected about that consumer.

91. GM and OnStar collect personal information about consumers as contemplated by CCPA §1798.110(c).

92. GM and OnStar's privacy policies, neatly hidden on their websites and made inconspicuous through the downloading of mobile applications, are ambiguous at best and fail to effectively inform consumers of the nature of personal information being collected.

93. GM and OnStar's User Terms and/or Privacy Statements make no mention of Lexis.

94. GM and OnStar knew or should have known that the information collected would be used by third-parties, such as insurance companies, to evaluate a consumer's eligibility and/or cost of insurance.

95. As a result of GM and OnStar's conduct, Plaintiffs' personal information was sold and/or shared with Lexis and other third-parties without their knowledge and/or consent.

96. Upon information and belief, the uncontextualized, misleading, and personal driving information on their consumer disclosures harmed Plaintiffs by significantly raising their insurance premiums and/or resulting in the denial of coverage.

97. The foregoing deceptive acts and practices constitute willful, reckless and/or negligent violations of CCPA §1798.110(c).

98. As a result of each and every willful violation of CCPA §1798.110(c), Plaintiffs are entitled to actual, statutory, and punitive damages as the Court may allow pursuant to CCPA §1798.199.90(a).

99. As a result of each and every negligent noncompliance of CCPA §1798.110(c), Plaintiffs are entitled to actual, statutory, and punitive damages as the Court may allow pursuant to CCPA §1798.199.90(a).

100. As a result of each and every knowing and/or willful violation of CCPA §1798.110(c), Plaintiffs are entitled to injunctive relief pursuant to CCPA §1798.199.90(a).

## COUNT IV

## KNOWING AND/OR WILLFUL VIOLATIONS OF CALIFORNIA CONSUMER PRIVACY ACT §1798.115

**(On Behalf of Plaintiffs and the CCPA Class Against All Defendants)**

101. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

102. Pursuant to CCPA §1798.115(c) and §1798.130(a)(5)(C), a business that sells or shares consumers' personal information, or that discloses consumers' personal information for a business purpose, shall disclose the following information in its online privacy policy if the business has an online privacy policy, and in any California-specific description of consumers' privacy rights, or, if the business does not maintain those policies, on its internet website:

    a) The category or categories of consumers' personal information it has sold or shared, or if the business has not disclosed consumers' personal information, it shall disclose that fact; and

    b) The category or categories of consumers' personal information it has disclosed for a business purpose, or if the business has not disclosed consumers' personal information for a business purpose, it shall disclose that fact.

103. A third-party shall also not sell or share personal information about a consumer that has been sold to, or shared with, the third-party by a business unless the consumer has received explicit notice and is provided an opportunity to exercise the right to opt-out pursuant to CCPA §1798.120. CCPA §1798.115(d).

104. Defendants sell, share, and/or disclose consumers' personal information as contemplated by CCPA §1798.115(c).

105. Defendants' User Terms and Privacy Statements do not include categories of personal information it sells or shares about consumers to third-parties, nor did Defendants provide Plaintiffs with explicit notice and/or an opportunity to opt-out of having their personal information sold and/or shared to third-parties.

106. Defendants' deceptive acts and practices constitute willful, reckless and/or negligent violations of CCPA §1798.110(c).

107. Upon information and belief, the uncontextualized, misleading, and personal driving information sold, shared, and/or disclosed without Plaintiffs' knowledge and/or consent, harmed Plaintiffs by significantly raising their insurance premiums and/or resulting in the denial of coverage.

108. As a result of each and every willful violation of CCPA §1798.115(c), Plaintiffs are entitled to actual, statutory, and punitive damages as the Court may allow pursuant to CCPA §1798.199.90(a).

109. As a result of each and every negligent noncompliance of CCPA §1798.115(c), Plaintiffs are entitled to actual, statutory, and punitive damages as the Court may allow pursuant to CCPA §1798.199.90(a).

110. As a result of each and every knowing and/or willful violation of CCPA §1798.115(c), Plaintiffs are entitled to injunctive relief pursuant to CCPA §1798.199.90(a).

**WHEREFORE**, Plaintiffs, on behalf of themselves and the other members of the Class, prays for the following relief:

 a) An award of actual damages pursuant to 15 U.S.C. §1681n(a)(1);

 b) An award of statutory damages pursuant to 15 U.S.C. §1681n(a)(1);

 c) An award of punitive damages as the Court may allow pursuant to 15 U.S.C. §1681n(a)(2);

d) An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. §1681n(a)(3), and 15 U.S.C. §1681(o)(a)(1) against Defendants for each incident of negligent noncompliance of the FCRA;

e) An award of actual damages pursuant to CCPA §1798.199.90(a);

f) An award of statutory damages pursuant to CCPA §1798.199.90(a);

g) An award of punitive damages as the Court may allow pursuant to CCPA §1798.199.90(a);

h) An injunction against Defendants' further data collection and/or sharing pursuant to CCPA §1798.199.90(a); and

i) Any other relief the Court may deem jut and proper.

## DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: March 28, 2024

By: // Martin Schmidt
Martin Schmidt, Esq. (SBN 171673)
**SCHMIDT NATIONAL LAW GROUP**
3033 Fifth Avenue, Suite 335
San Diego, California 92103
Telephone: (800) 631-5656
mschmidt@nationalinjuryadvocates.com

Jeffrey L. Haberman (*pro hac vice*)
Scott P. Schlesinger (*pro hac vice*)
Jonathan R. Gdanski (*pro hac vice*)
**SCHLESINGER LAW OFFICES, P.A.**
1212 SE Third Avenue
Fort Lauderdale, Florida 33317
Telephone: (954)467-8800
jhaberman@schlesingerlaw.com
scott@schlesingerlaw.com
jonathan@schlesingerlaw.com